UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| EDWARD WATSON, an Individual, Individually and on behalf of all others similarly situated, and the general public,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>TENNANT COMPANY, a Minnesota Corporation, and DOES 1 through 50, inclusive,<br><br>　　　　Defendant. | No. 2:18-CV-02462-WBS-DB<br><br>MEMORANDUM AND ORDER RE: MOTION TO DISMISS AND MOTION TO STRIKE |

----oo0oo----

　　　　Plaintiff Edward Watson initiated this putative class action against his former employer defendant Tennant Company and Does 1 through 50 alleging multiple violations of state law arising out of his employment with defendant.  Presently before the court are defendant's motion to dismiss various claims for failure to state a claim pursuant to Federal Rule of Civil

1

Procedure 12(b)(6) and defendant's motion to strike various claims pursuant to Rule 12(f). (Docket Nos. 6,7.)

Defendant specializes in the sale and upkeep of cleaning equipment. (Compl. ¶ 7. (Docket No. 1-2).) It employs hourly non-exempt service technicians to repair and maintain its customers' cleaning equipment. (Compl. ¶ 11.) Plaintiff previously worked for defendant in this capacity, including during some portion of 2016. (Compl. ¶ 6.) Plaintiff's claims concern defendant's practices with respect to, inter alia, overtime wages, meal and rest periods, and wage statements.

On or about August 18, 2017, plaintiff made an online submission notifying California's Labor and Workforce Development Agency of facts and theories regarding defendant's alleged Labor Code violations. (Compl. ¶ 66. (Docket No. 1-2).) Nearly one year later, on August 7, 2018, plaintiff filed a civil action in the Superior Court of the State of California for the County of Solano. The complaint asserts claims against all defendants for: (1) unpaid overtime (Cal. Lab. Code § 1194);(2) unpaid minimum wages (Cal. Lab. Code §§ 1194, 1997, 1197.1); (3) meal and rest break violations (Cal. Lab. Code §§ 226.7, 512; Wage Order 4-2001); (4) failure to provide accurate itemized wage statements (Cal. Lab. Code § 226); (5) waiting time penalties (Cal. Lab. Code §§ 201-203); (6) conversion; (7) violation of California's Unfair Competition Law ("UCL"), Business and Professions Code

2

sections 17200 et seq.; and (8) penalties under the California Private Attorneys General Act of 2004 ("PAGA"). (See Docket No. 1-2.)

On September 7, 2018, defendant removed the action to this court. (Docket No. 1.) Defendant now moves to dismiss plaintiff's PAGA and conversion claims. (Docket No. 6.) It also moves to strike elements of plaintiff's requests for damages in the complaint's first, second, third, and fourth causes of action, as well as to strike plaintiff's conversion and PAGA claims in their entirety. (Docket No. 7.)

I. Defendant's Rule 12(b)(6) Motion

To survive a motion to dismiss, a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). Under this standard, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable." Twombly, 550 U.S. at 556 (2007).

A. PAGA claims against Defendant

Defendant moves to dismiss plaintiff's PAGA claim on the ground that it is barred by the statute of limitations and

therefore cannot state a claim upon which relief can be granted. (Def.'s Mot. to Dismiss at 2-4 (Docket No. 6-1).)

PAGA enables aggrieved employees to file actions to recover civil penalties for certain violations of the California Labor Code; litigants bringing PAGA claims do so on behalf of themselves, other employees, and the State of California. An aggrieved employee cannot bring a PAGA action before exhausting the administrative procedures outlined in Labor Code section 2699.3. Before initiating a civil action, the aggrieved employee must notify the Labor and Workforce Development Agency ("LWDA") of the Labor Code violation(s). The aspiring plaintiff is only free to commence a civil action based on these violations after receiving notice from the LWDA that the agency does not intend to investigate the violations or, alternatively, after the passage of 65 days from the date he notified the LWDA of the violation. Cal. Lab. Code § 2699.3.

Under California Code of Civil Procedure section 340(a), the statute of limitations for an action initiated by an individual or an individual and the state is one year in actions "for a penalty or forfeiture . . . except if the statute imposing it prescribes a different limitation." Cal. Code Civ. Proc. § 340. Courts have consistently recognized that PAGA claims are governed by this one-year statute of limitations. See, e.g., Hoang v. Vinh Phat Supermarket, Inc., No. 2:13-cv-00724 WBS GGH, 2013 WL 4095042, at *12 (E.D. Cal. Aug. 13, 2013); Culley v.

Lincare Inc., 236 F. Supp. 3d 1184, 1191 (E.D. Cal. 2017) (England, J.) ("The statute of limitations on a PAGA claim is one year."); Thomas v. Home Depot USA Inc., 527 F. Supp. 2d 1003, 1007 (N.D. Cal. 2007).

In PAGA actions, this statute of limitations may be tolled for up to 65 days. This tolling period begins the date an aggrieved employee notifies the LWDA of facts and theories pertaining to an employer's alleged Labor Code violations. It continues until either: a) the LWDA provides notice that it does not intend to pursue the labor code violations the aggrieved employee notified it about; or b) sixty-five calendar days have passed from the date on which the employee provided notice of the alleged violations to the LWDA. Cal. Lab. Code § 2699.3(d). See also Crosby v. Wells Fargo Bank, N.A., 42 F. Supp. 3d 1343, 1346 (C.D. Cal. 2014); Slay v. CVS Caremark Corp., No. 1:14-cv-01416 TLN EPG, 2015 WL 2081642, at *6 (E.D. Cal. May 4, 2015).

Despite this settled authority holding that PAGA actions are governed by section 340(a)'s one-year statute of limitations, plaintiff argues that the statute of limitations for PAGA claims is three years. (Pls.' Opp'n (Docket No. 10).) He advances three arguments to support this position. The first two of these arguments share an analogous logic: because the statute of limitations for a given action related to the enforcement of the Labor Code is three years, the statute of limitations for PAGA claims is also three years.

In the first instance, plaintiff argues that the statute of limitations for PAGA claims was extended by a 2011 amendment to California Labor Code Section 200.5. That amendment

gave the Division of Labor Standards Enforcement three years from the date a civil penalty, fee, or penalty fee becomes final to commence an action for the collection of that penalty or fee. Cal. Lab. Code § 200.5(a). The plaintiff is correct that a plaintiff in a PAGA action stands in the shoes of the labor enforcement agencies. Culley 236 F. Supp. 3d at 1192 (E.D. Cal. 2017) (England, J.) ("because PAGA allows an individual to stand in the shoes of the LWDA, the individual's ability to pursue PAGA penalties should be coextensive with the LWDA's."). This reminder is irrelevant, though. Here, it is the statute of limitations for PAGA claims, not the limitations period governing actions for the collection of penalties awarded as the result of a PAGA claim, that is at issue. Plaintiff does not explain why the statute of limitations governing the Division of Labor Standards Enforcement's ability to bring collection actions for previously awarded fees should have any bearing on the application of section 340(a)'s one-year statute of limitations in the PAGA context.

Similarly unpersuasive is the argument that the three-year statute of limitations for wage claims advanced under Section 558 and Section 210 of the Labor Code implies a coextensive statute of limitations for PAGA claims. Plaintiff cites one legal authority supporting this claim, Novoa v. Charter Commc'ns, LLC, 100 F. Supp. 3d 1013, 1025 (E.D. Cal. 2015)(Ishii, J.). The court in Novoa affirmed that Section 226 provides for a three-year statute of limitations for claims seeking recovery of lost wages, but offers no indication of a correspondence between this statute of limitations and that of PAGA claims. See

generally Id. at 1024-25 (reviewing case law about the divergent statutes of limitations for wage and penalty claims under Section 226 and holding that a three-year limitations period applied to plaintiff's claims for lost wages while a one-year limitations period governed plaintiff's claim with respect to the recovery of penalties).

Plaintiff's final argument is that a three-year statute of limitations for PAGA claims is implied by a 2015 amendment to PAGA that allows employers to cure wage statement violations by furnishing three years of corrected wage statements. This reasoning ignores the fact that the statute of limitations begins to run on the date of plaintiff's last alleged wrong. That an aggrieved employee's ability to initiate a PAGA action is linked to whether an employer has cured three years' worth of noncompliant wage statements has no bearing on the statute of limitations governing the initiation of such an action.

In short, the legal authority holding that PAGA claims are governed by Section 340(a)'s one-year statute of limitations is substantial. The court is unpersuaded by plaintiff's arguments that the court ought to depart from this settled law.

Plaintiff's complaint does not allege that his last alleged wrong occurred within the one year and sixty-five day period preceding the initiation of his PAGA claim. The complaint is ambiguous as to the date of plaintiff's last alleged wrong. It indicates that plaintiff's employment with defendant included some portion of 2016. (Compl. ¶ 6.) The complaint does not clarify whether plaintiff was also employed by defendant at some

point in 2017 or 2018.[1]  While defendant's assumption that plaintiff's last alleged wrong occurred no later than December 31, 2016 may be reasonable, the current language of the complaint leaves open the possibility that there was less than one year and sixty-five-days between plaintiff's last alleged wrong and the filing of plaintiff's civil action on August 17, 2018. Accordingly, defendant's motion to dismiss plaintiff's eighth cause of action will be granted with leave to amend.

      B.    Conversion Claims Against Defendant

Defendant moves to dismiss plaintiff's conversion claim because it is barred by the new right-exclusive remedy doctrine. (Def.'s Mot. to Dismiss at 4-8 (Docket No. 6-1).)  This doctrine provides that "where a statute creates a right that did not exist at common law and provides a comprehensive and detailed remedial scheme for its enforcement, the statutory remedy is exclusive." Rojo v. Kliger, 52 Cal. 3d 65, 79 (1990).  As its name suggests, the new right-exclusive remedy doctrine does not impact plaintiffs' ability to pursue common law remedies that precede analogous statutory remedies.  If a common law right predates the statutory codification of an equivalent right, then it persists in parallel alongside the statutory right; the statutory remedy is "generally considered to be cumulative" and plaintiffs are free to pursue the older remedy.  Id.

The first step in determining whether a claim is barred

---

[1] A declaration submitted by the defendant with the notice of removal states plaintiff's last day of employment with defendant was November 30, 2016 (Decl. of Jess Whitford ¶ 2 (Docket No. 1-1).)  Because this evidence is extrinsic to the complaint, the court will not consider it in evaluating the motion to dismiss.

8

by the new right-exclusive remedy doctrine is examining whether the remedies at issue were available under common law. Thus, to the extent that plaintiff's conversion claim concerns rights created by statute which were not available under common law, it is precluded by the new right-exclusive remedy rule. To the extent, however, that plaintiff's conversion claim concerns rights existing under common law before the codification of the Labor Code, it is not precluded.

Plaintiff's conversion claim for rest and meal period premiums can be easily dispensed with: these rights were established by the Labor Code and no right to their recovery existed at common law. See Perez v. Leprino Foods Co., No. 1:17-cv-00686 AWI BAM, 2017 WL 6540512 (E.D. Cal. Dec. 21, 2017) (dismissing the elements of a plaintiff's conversion claim that concerned meal and rest period premiums because neither meal period premiums nor a remedy for the recovery of meal period premiums existed at common law). Thus the elements of plaintiff's common law conversion claim concerning meal and rest period premiums are unequivocally precluded by the new right-exclusive remedy. Accordingly, they will be dismissed without leave to amend.

The analysis concerning the viability of plaintiff's claim for the conversion of wrongfully withheld minimum and overtime wages is more complex; it is informed by two irreconcilable lines of case law. The first, relied on by the defendant, maintains that because of the new right-exclusive remedy doctrine, a common law conversion claim is not available to plaintiffs alleging wrongfully withheld wages. See, e.g.,

Green v. Party City Corp., No. CV-01-09681 CAS (EX), 2002 WL 553219 (C.D. Cal. Apr. 9, 2002); In re Wal-Mart Stores, Inc. Wage & Hour Litig., 505 F. Supp. 2d 609 (N.D. Cal. 2007); Santiago v. Amdocs, Inc., No. C 10-4317 SI, 2011 WL 1303395 (N.D. Cal. Apr. 2, 2011).

Though abundant, cases following Green in holding that the new right-exclusive remedy doctrine precludes the pursuit of a conversion claim for unpaid wages, often gloss over the operative question of whether a common law right to minimum or overtime wages predates the Labor Code. See Sims v. AT & T Mobility Servs. LLC 955 F. Supp. 2d 1110, 1116 (E.D. Cal. 2013)(Mendez, J.)("The Green court never reached the question of whether or not a right to recover overtime pay and unpaid wages existed at common law . . . Green's holding only presumed that such rights did not exist at common law; but if such rights did exist at common law, the 'new right-exclusive remedy' rule cannot apply to actions for unpaid wages because such recoveries would not constitute a new right").

A second line of cases beginning with Sims analyzes whether the new right-exclusive remedy rule precludes the pursuit of a conversion claim for unpaid minimum or overtime wages via a much more explicit engagement with the question of whether a common law right to such claims predates the Labor Code.

In Sims, Judge Mendez found that under the new right-exclusive remedy doctrine, a plaintiff could bring a conversion claim for unpaid overtime and minimum wages. In explaining this holding, the court pointed to the pre-existing common law right to fair compensation for one's labor:

10

> The Labor Code's minimum wage and overtime provisions simply
> defined what that reasonable amount was, but they did not
> create the underlying right of an employee to be paid at a
> fair rate for his labor or the right of that employee to sue
> for reasonable compensation if he was not.

955 F. Supp. 2d at 1117. The defendant's assertion that the court in Sims "rejected the 'new right-exclusive remedy' doctrine" (Def.'s Mot. to Dismiss at 6 fn. 3 (Docket No. 6)) is thus misleading. Sims did not reject the doctrine. It applied it to a set of facts similar to those at issue here. In doing so, it held that under the new right-exclusive remedy doctrine, a plaintiff may bring a conversion claim for unpaid overtime wages or minimum wages.

In recent years, several other courts have followed Sims in holding that because of the common law right to recover, in quantum meruit, the value of unpaid labor, the new right-exclusive remedy rule does not preclude a conversion claim for unpaid overtime or minimum wages. See, e.g., Alvarenga v. Carlson Wagonlit Travel, Inc., No. 1:15-cv-01560 AWI BAM, 2016 WL 466132, at *4 (E.D. Cal. Feb. 8, 2016) (holding that "because remedies existed at common law to recover unpaid or underpaid wages . . . the remedies provided by the Labor Code supplement, rather than supplant, the common law remedies."); Rodriguez v. Cleansource, Inc., No. 14-cv-0789-L DHB, 2015 WL 5007815, at *9 (S.D. Cal. Aug. 20, 2015)(following Sims in ruling that "a claim for conversion based on unpaid wages and overtime is viable under

11

California law"); Dittmar v. Costco Wholesale Corp., No. 14-cv-1156 LAB JLB, 2016 WL 3387464, at *2 (S.D. Cal. June 20, 2016)(holding that a cause of action for conversion of unpaid wages is viable because of the existence of a common law right to recover unpaid wages).

Given the case law suggesting that a common law right to recovery in quantum meruit for the value of unpaid labor antecedes the Labor Code's enumeration of employees' rights to overtime and minimum wages, a conversion claim for overtime or minimum wages is not necessarily barred by the new right-exclusive remedy rule. The Labor Code's minimum and overtime wage provisions may "amplify, not abrogate," the plaintiff's common law rights. Rojo, 52 Cal. at 75.

Having established that the plaintiff's claim for the conversion of unpaid minimum and overtime wages is not barred by the new right-exclusive remedy doctrine, the court will now examine whether plaintiff has sufficiently pled a property interest in the allegedly converted unpaid wages.

A plaintiff seeking to establish conversion under California's common law must prove: "(1) his ownership of or right to possess the property at the time of the conversion, (2) that the defendant disposed of the plaintiff's property rights or converted the property by a wrongful act, and (3) damages." Bank of New York v. Fremont Gen. Corp., 523 F.3d 902, 914 (9th

Cir. 2008). In examining the "personal property" element of the tort, California courts have consistently held that, "[m]oney cannot be the subject of a cause of action for conversion unless there is a specific, identifiable sum involved . . . " PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP, 150 Cal. App. 4th 384, 395 (2d Dist. 2007). See also Sanowicz v. Bacal, 234 Cal. App. 4th 1027 (2d Dist. 2015); Hendrickson v. Octagon Inc., 225 F. Supp. 3d 1013, 1032 (N.D. Cal. 2016). Though a quantity of money must be specific and identifiable to be converted, "it is not necessary that each coin or bill be earmarked." Haigler v. Donnelly, 18 Cal. 2d 674, 681 (1941).

In this district, Judge Wanger previously considered whether unpaid wages constitute personal property for the purposes of a conversion action. The plaintiffs in Vasquez v. Coast Roofing, No. 1:07-cv-227 OWW DLB, 2007 WL 1660972 (E.D. Cal. June 6, 2007), were a class of non-exempt roofers employed by the defendant in that case. Along with various state and federal wage and hour violations, they alleged that in failing to pay minimum and overtime wages, the defendant had committed the tort of conversion. The plaintiffs argued that because further discovery could clarify the specific sum of the wages allegedly converted, the unpaid wages were convertible personal property. The court rejected this argument and granted the defendants' motion to dismiss the conversion action. Id.

In explaining its decision to dismiss plaintiff's

13

conversion claim, the court cited the lack of California authority addressing whether wages could be subject to a conversion action. Id. It also pointed to the robust remedial scheme already available to employees under California and federal law and the reasoning of out-of-state cases addressing the issue. Id. "The conversion theory proffered by Plaintiffs," the court concluded, "is an idea whose time has not come. There is no reason to extend tort law into a field comprehensively regulated by federal and state wage and hour laws." Id. at *10.

Several years later, the court in Sims v. AT & T Mobility Servs. LLC, 955 F. Supp. 2d 1110, 1120 (E.D. Cal. 2013), predicted California law very differently. The court accepted the plaintiff's general premise that unpaid wages could constitute convertible personal property under California law. It took issue, however, with the pleading, which did not adequately show "that the wages sought constitute an identifiable sum or how such a sum can be readily ascertained." Id. at 1120. Since "[a]n allegation to that effect is a necessary element of a properly pled conversion claim," the court ruled that plaintiff's conversion claim was improperly pled. Id. It granted defendant's motion to dismiss the conversion claim and gave plaintiff's leave to cure this defect via amendment.

In Alvarenga v. Carlson Wagonlit Travel, Inc., No. 1:15-cv-01560 AWI BAM, 2016 WL 466132 (E.D. Cal. Feb. 8, 2016), Judge Ishii considered a defendant's motion to dismiss a former employee's conversion claim for unpaid wages. The court in Alvarenga followed Sims in predicting that California law would recognize unpaid wages as constituting convertible property if

14

they were adequately specified and "capable of identification" Id. at *5 (citations omitted). As in Sims, the court in Alvarenga found that plaintiff's allegation that defendant failed to pay wages was insufficiently specific and remarked that "because Plaintiff was classified as an exempt employee, it is quite likely that records of the hours that she worked were not kept, making any definite calculation of an amount converted to be impossible." Id. Regardless, the court held that given the record before it, it could not determine that amendment would be futile. The plaintiff's conversion claim was dismissed. Id. The plaintiff was given leave to amend the complaint so that it would "specifically allege" the basis for the conversion claim and describe how the "specific sum that was allegedly converted could be ascertained." Id. (quoting Khan v. K2 Pure Sols., L.P., No. 12-cv-05526 WHO, 2013 WL 6503345, at *9 (N.D. Cal. Dec. 4, 2013)).

Like the plaintiffs in Sims and Alvarenga, plaintiff here has insuffieiently pled conversion: plaintiff's claim that "specific hours went unpaid" leaves the total amount of unpaid wages, the dates on which wages went unpaid, and the specific nature and circumstances of the unpaid labor entirely indefinite. Also unspecified are the means through which the specific sum converted could be identified. Because its descriptions of the unpaid minimum and overtime wages are so vague, the complaint fails to establish that the allegedly converted wages were plaintiff's personal property.

It is possible that this deficiency in the pleading could be cured through amendment. This is especially the case

15

because unlike the plaintiff in Alvarenga the plaintiff in this case is a non-exempt worker. Accordingly, defendant's motion to dismiss plaintiff's conversion claim will be granted with leave to amend.

## I. Defendant's Rule 12(f) Motion

Rule 12(f) of the Federal Rules of Civil Procedure allows the court to strike from a pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are "generally disfavored" and are rarely granted in the absence of prejudice to the moving party. Rosales v. Citibank, Fed. Sav. Bank, 133 F.Supp.2d 1177, 1180 (N.D.Cal.2001). Courts may find prejudice where the redundancy or irrelevance of a pleading may require a party to "engage in burdensome discovery around frivolous matters." J & J Sports Prods., Inc. v. Luhn, Civ. No. 2:10-3229 JAM CKD, 2011 WL 5040709, at *1 (E.D. Cal. Oct.24, 2011). This discretionary prerogative notwithstanding, even immaterial allegations need not be stricken if they do not jeopardize the "full understanding" that emerges from reading the complaint as a whole. Pino v. City of Sacramento, No. 2:05-cv-02080 WBS DAD, 2006 WL 193181, at *3 (E.D. Cal. Jan. 19, 2006).

In its notice of motion to strike portions of plaintiff's complaint pursuant to Rule 12(f), the defendant enumerates the fifteen portions of the complaint it moves to strike.[2] (Def.'s Notice of Mot. to Strike (Docket No. 7).) The

---

[2] Among these is a request to strike "Complaint ¶ 61, page 14, lines 26-26." The request quotes material from lines 26 and 27 of page 14, and the material from line 27 is part of a sentence that continues onto line 28. Accordingly, the court

16

court expresses no opinion about the validity of any particular legal theory advanced by defendant in support of its motion to strike the first fourteen portions. Defendant may have raised valid concerns about the materiality and relevance of several portions of the complaint. Regardless, at this stage in the litigation, the court is unable to determine that these elements "have no logical connection to the controversy at issue." See In re UTStarcom, Inc. Sec. Litig., 617 F. Supp. 2d 964, 969 (N.D. Cal. 2009); see also Champlaie, 706 F. Supp. 2d at 1039. Moreover, defendant has not shown that these elements -- often merely a sentence or a clause ensconced amidst highly relevant and pertinent material - - prejudice the defendant. The "full understanding" that emerges from reading the complaint is not tainted by these stray elements. Accordingly, defendant's motion to strike will be denied with respect to the portions of the complaint enumerated in paragraphs 1-14 of the notice of motion to strike. (Def.'s Notice of Mot. to Strike (Docket No. 7).)

Defendant also seeks to strike the eleventh paragraph of plaintiff's prayer for relief, which asks "[f]or disgorgement of profits garnered as a result of Defendants' unlawful failure to pay overtime wages earned." ((Compl. at 17 (Docket No. 1-2).)

Plaintiff and defendant agree that non-restitutionary disgorgement is not permitted by the UCL. See Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 63 P.3d 937 (2003).

The Korea Supply court explicitly identified the disgorgement of profits as non-restitutionary. Id. at 1148

---

will consider whether to strike Complaint ¶ 61, page 14, lines 26-28.

17

("[u]nder the UCL, an individual may recover profits unfairly obtained to the extent that these profits represent monies given to the defendant or benefits in which the plaintiff has an ownership interest"). In light of this fact, the plaintiff's insistence that the disgorgement he seeks is purely restitutionary in nature is perplexing. Plaintiff's prayer for the disgorgement of profits -- which he asserts along with a separate prayer for the restitution of all monies due him from defendant's allegedly unlawful business practices -- is clearly a claim for non-restitutionary disgorgement. This type of disgorgement is not available in a UCL action and plaintiff does not explain under what alternative legal theory he is entitled to non-restitutionary disgorgement.

    Plaintiff's prayer for the disgorgement of profits garnered as a result of defendant's unlawful failure to pay overtime wages earned is a standalone paragraph in plaintiff's prayer for relief. It is a discrete element of the complaint that is wholly immaterial to the proceedings. For this reason, the discovery potentially engendered by this allegation could place an unnecessary and prejudicial burden on defendant. Accordingly, defendant's motion to strike is granted with respect to plaintiff's prayer for "disgorgement of profits garnered as a result of defendants' unlawful failure to pay overtime wages earned."

   IT IS THEREFORE ORDERED that defendant's motion to dismiss the eighth cause of action of plaintiff's complaint be, and the same hereby is, GRANTED with leave to amend;

    IT IS FURTHER ORDERED that defendant's motion to

|   |   |
|---|---|
| 1 | dismiss the sixth cause of action of plaintiff's complaint be, |
| 2 | and the same hereby is, GRANTED with leave to amend to the extent |
| 3 | that it concerns minimum wages and overtime wages, and without |
| 4 | leave to amend to the extent that it concerns meal and rest |
| 5 | period premiums; |
| 6 | AND IT IS FURTHER ORDERED that defendant's motion to |
| 7 | strike (Docket No. 7) is DENIED with respect to the following |
| 8 | elements of the complaint: Complaint ¶ 28, page 9, lines 1-2; |
| 9 | Complaint ¶ 34, page 9, line 25; Complaint ¶ 35, page 10, lines |
| 10 | 1-3; Complaint ¶ 36, page 10, lines 4-7; Complaint ¶ 41, page 11, |
| 11 | line 2-3; Complaint ¶ 41, page 11, line 3; Complaint ¶ 41, page |
| 12 | 11, line 3; Complaint ¶ 44, page 11, line 19; Complaint ¶¶ 50-56; |
| 13 | Complaint ¶ 61, page 14, lines 26-28; Complaint ¶¶ 62-68; |
| 14 | Complaint, Prayer for Relief ¶ 3, page 16, lines 26-27; |
| 15 | Complaint, Prayer for Relief ¶ 4, page 17, lines 1-2; and |
| 16 | Complaint, Prayer for Relief ¶ 8, page 17, lines 8-9. The motion |
| 17 | is GRANTED with respect to Complaint, Prayer for Relief ¶ 11, |
| 18 | page 17, lines 12-13. |
| 19 | Plaintiff has twenty days from the date this Order is |
| 20 | signed to file an amended complaint, if he can do so consistent |
| 21 | with this Order. |
| 22 | Dated: October 17, 2018 |

*/s/ William B. Shubb*
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE